IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CLARK COLABUONO,                              )
                                              )
            Plaintiff,                        )      No.    09 CV 1961
      v.                                      )
                                              )      Judge Robert W. Gettleman
TRI-STAR CABINET & TOP COMPANY, INC.,         )
            Defendant.                        )

## MEMORANDUM OPINION AND ORDER

Plaintiff Clark Colabuono sued defendant Tri-Star Cabinet & Top Company, Inc. in a two-count complaint, alleging violations of the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621, *et seq.*, and the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, *et seq.*, as a result of defendant's termination of plaintiff's employment. Defendant has moved for summary judgment on both claims. Based on the parties' related filings and attachments, the following motions are now before the court: 1) defendant's motion for summary judgment on both counts; (2) plaintiff's motion to strike defendant's affidavits in support of its motion for summary judgment; and (3) plaintiff's motion to strike portions of defendant's reply brief materials or alternatively, for leave to file a sur-response. For the reasons discussed below, the court grants defendant's motion for summary judgment, denies plaintiff's motion to strike defendant's affidavits, and denies plaintiff's motion to strike portions of defendant's reply brief or for leave to file a sur-response.

# **FACTS**[1]

Plaintiff Clark Colabuono worked for defendant Tri-Star, a company that builds custom cabinets and countertops for residential homes, for almost twenty-two years. In the second half of 2006, the economic downturn took its toll on defendant, which began to experience a substantial decline in orders for its products, and it began to look for ways to cut back. Beginning in December 2006, defendant eliminated overtime, reduced its employees' forty-hour-plus workweek to a maximum of a four-day workweek, and abolished the two mandatory Saturday workdays each month that were previously needed to meet its production requirements.

The next month, defendant began the first of what turned out to be several rounds of employee layoffs. As part of the initial round of layoffs, defendant's plant manager instructed Denny DelSasso, foreman of the specials department, to identify employees to be laid off in his department. DelSasso chose plaintiff as the first target of the inevitable layoffs. DelSasso testified that he based this decision on his own intimate knowledge of plaintiff's performance (or lack thereof), which is also evident in plaintiff's performance reviews, attendance charts, and disciplinary record. These all show that plaintiff had significant performance and attendance problems that had previously come to the attention of Tri-Star management. Plaintiff, who was then fifty-three years old, thus lost his job in this first wave of layoffs, along with a number of other employees across defendant's various departments.

Defendant required its employees to fill out self-evaluations as well as asking supervisors (in plaintiff's case, DelSasso) to complete evaluations for their workers. Both DelSasso's

---

[1]Unless otherwise noted, the following facts, taken from the parties' L.R. 56.1 statements and exhibits attached thereto, are undisputed.

evaluations and plaintiff's own self-evaluations state that he was sometimes late or absent and distracted others while working, and reflect that he exhibited desirable performance characteristics only "sometimes" or "usually" as opposed to "all the time." Plaintiff's last performance review (completed by DelSasso) indicated that he was "sometimes" late or absent and noted that he had missed time due to health problems and family needs, and that "[t]ime off should improve this coming year." Further, plaintiff's personnel file contains a June 2005 written warning citing him for "poor quality of work" and an October 2005 written warning citing him for "lack of production." Finally, company calendars reveal plaintiff's increasingly poor attendance record. His 2005 calendar reveals that he was late to work on 26 days, worked partial days on 19 separate occasions, and was absent on 16 days, for a total of 61 days with attendance issues. It got worse in 2006: in his final year at Tri-Star, plaintiff was at least one hour late to work 34 days (on many of those days he was two or three hours late), worked 19 partial days, and was absent on 28 days, for a total of 81 days on which he had significant attendance problems.

Until plaintiff was laid off, the specials department had nine employees. Layoffs and reassignments have reduced that number to four, and defendant has not hired any new employees in that department. The remaining special department employees were born in 1953, 1967, 1968, and 1969; those laid off in 2007 and 2008, respectively, were born in 1953 (plaintiff) and 1974; those who, since 2005, have been reassigned to a different department were born in 1960 and 1978. The rest of the company has been similarly affected by layoffs, and while some recently-terminated employees have been recalled or reassigned for short-term work, none has been permanently re-hired.

**DISCUSSION**

I.  **Legal Standard**

A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). The moving party bears the initial burden of pointing out the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party has met that burden, the nonmoving party must go beyond the pleadings and "set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 322-23 ("In our view, the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial."). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Stewart v. McGinnis, 5 F.3d 1031, 1033 (7th Cir. 1993). This standard is applied with added rigor in employment discrimination cases, where issues of intent and credibility often dominate. Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1038 (7th Cir. 1993) (citations omitted). The nonmoving party must, however, "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

Corp., 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50.

## II.    Count I: Violation of the ADEA

Plaintiff alleges that defendant violated the ADEA when it terminated his employment on January 5, 2007. The ADEA makes it unlawful for an employer to discriminate against an employee "because of" the employee's age, language that the Supreme Court has interpreted to mean that a plaintiff must show his age was the but-for cause of the challenged employment action. 29 U.S.C. § 623(a); Gross v. FBL Fin. Servs., Inc., — U.S. —, 129 S.Ct. 2343, 2350-52 (2009); Mach v. Will County Sheriff, 580 F.3d 495, 498 (7th Cir. 2009). An ADEA plaintiff has two ways to avoid summary judgment: the so-called direct and indirect methods of proof. Colabuono asserts that he can use both methods of proof to establish his prima facie case; through neither of these methods, though, can his ADEA claim survive summary judgment.

To prove an ADEA claim using the direct method, a plaintiff may supply either "direct evidence, such as near-admissions by the employer, [or] more attenuated circumstantial evidence that suggests discrimination albeit through a longer chain of inferences." Faas v. Sears, Roebuck & Co., 532 F.3d 633, 641 (7th Cir. 2008) (internal quotations and citations omitted). Because he cannot point to direct evidence, such as an admission or near-admission that defendant's actions were based on his age, plaintiff argues that "[t]he circumstances of [his] discharge do present a mosaic that smells of discriminatory intent." That single sentence is plaintiff's entire argument in support of the direct method of proof. This argument is thereby waived. It is not the court's obligation to research and construct a party's argument for him. See 330 W. Hubbard Restaurant Corp. v. United States, 203 F.3d 990, 997 (7th Cir. 2000) ("A party's failure to

5

address or develop a claim in its opening brief constitutes a waiver of that claim, for it is not the obligation of this court to research and construct the legal arguments open to the parties, especially when they are represented by counsel.") (internal citations and quotations omitted); Perry v. Sullivan, 207 F.3d 379, 383 (7th Cir. 2000) ("Even if this argument made sense, Perry cited no authority for this proposition and devoted less than one sentence in the brief to it. Therefore, it is deemed waived."); United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam) ("Judges are not like pigs, hunting for truffles buried in briefs.").

Plaintiff says he can also prove his case indirectly through the McDonnell Douglas burden-shifting method. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973); Oxman v. WLS-TV, 846 F.2d 448, 452 (7th Cir. 1988) (extending the McDonnell Douglas test to ADEA cases). Using this method, a plaintiff establishes a prima facie case of age discrimination if he shows: (1) he was in the protected class (age 40 or older); (2) he was performing his job satisfactorily by meeting his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was replaced by someone substantially younger, or younger similarly-situated employees were treated more favorably. Denisi v. Dominick's Finer Foods, Inc., 99 F.3d 860, 864 (7th Cir. 1996). If the plaintiff establishes his prima facie case, the burden of production shifts to the defendant to provide a legitimate non-discriminatory reason for the adverse employment action. Id. If the defendant succeeds, the burden shifts back to the plaintiff to present evidence that the proffered non-discriminatory reason is pretextual. Id. The plaintiff may show "either that a discriminatory reason more likely motivated the employer, or that the employer's proffered explanation is unworthy of credence." Robinson v. PPG Indus., Inc., 23 F.3d 1159, 1163 (7th Cir. 1994). At all times, the plaintiff bears the ultimate burden of

6

persuading the trier of fact that the defendant intentionally discriminated against him.  See Hughes v. Brown, 20 F.3d 745, 747 (7th Cir. 1994).

As to the indirect method, the first and third prongs of the McDonnell Douglas test are not at issue; no one disputes that plaintiff is over forty and that he suffered an adverse employment action.  But plaintiff has not provided any evidence to satisfy the second prong of the McDonnell Douglas, which requires him to show that he was meeting defendant's legitimate expectations.  In addition, because plaintiff has not provided evidence that would allow him to show that he was replaced by a younger employee or that his duties were absorbed by younger retained workers, he cannot meet the fourth prong of the McDonnell Douglas test.

**Plaintiff Met Employer's Legitimate Performance Expectations**

To establish the second prong of his prima facie case under McDonnell Douglas, plaintiff must point to evidence that he was meeting defendant's legitimate performance expectations.  Plaintiff fails in this task, offering no evidence that would allow a reasonable jury to find that he was doing so.  Instead, he improperly attempts to place that burden on defendant, urging the court to deny summary judgment because defendant "lacks credible evidence to support its 'argument' that plaintiff was selected for layoff as a result of his personnel file."  Even putting aside the fact that defendant *does* provide affidavits, depositions, and other evidence supporting its position that plaintiff had serious attendance problems and did not perform up to defendant's standards, the moving party does not need to supply evidence to negate its opponent's claims.  Celotex, 477 U.S. at 323.  In a case like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, Rule 56 requires that party to go beyond the pleadings and offer evidence showing that there is a genuine issue of material fact.  Fed. R. Civ. P. 56(e);

7

Celotex, 477 U.S. at 324; Coco v. Elmwood Care, Inc., 128 F.3d 1177, 1179 (7th Cir. 1997) ("If the plaintiff has no direct evidence of discrimination and is therefore confined to the [McDonnell Douglas] formula, he must prove that he was meeting (or at least that there is a genuine issue of whether he was meeting) his employer's bona fide expectations, before he can force the employer to produce the reasons for why he was fired or otherwise subjected to adverse action.") (citation omitted). Plaintiff cannot rest on defendant's purported failure to provide evidence. It is his burden to present evidence that he was performing up to defendant's standards. His failure to do so mandates that the court grant summary judgment.

Plaintiff does make an additional, albeit halfhearted, attempt to show that he was performing his job satisfactorily, but this effort is similarly unavailing. He points to his performance evaluations from 2005 and 2006, which he characterizes as evidence that he was meeting defendant's performance expectations. These evaluations list nineteen "performance characteristics" for which the evaluator may choose from the following four options: "sometimes," "usually," "all the time," and "N/A." Plaintiff emphasizes DelSasso's 2005 review, which (according to plaintiff[2]) gave him thirteen "all the time" scores, three "usually" scores, and one "sometimes" score. Notably, however, plaintiff does not emphasize which performance characteristics garnered him the less favorable "usually" and "sometimes" rankings.

Plaintiff's one "sometimes" rating is for attendance. ("Is the employee late or absent?"). His three "usually" scores are for other important qualities like whether the employee "[d]oes a quality job as quickly as possible." True, he received many "all the time" ratings, but many of

---

[2] For the category "Does a quality job as quickly as possible," DelSasso circled both "usually" and "all the time." Colabuono has counted this as one "usually" and one "all the time."

8

those are for more trivial qualities, like whether the employee "[c]hange[s] and turn[s] into [sic] Supervisor, dull bits and blades" or whether he keeps his "[s]leeves rolled up or buttoned while working." Even if the court were to assume that defendant weighed all these qualities equally, achieving an "all the time" ranking for each of the characteristics could be considered the bare threshold for meeting defendant's expectations. Moreover, a performance review showing that plaintiff received the lowest ranking for attendance and a medium ranking for doing a quality job does not support a finding that plaintiff met defendant's expectations. Rather, it is evidence that he failed to meet those expectations.

Further, the same performance review contains DelSasso's handwritten notes that plaintiff had "time missed" due to "family needs" and "health risk," but that his "time off should improve this coming year." This performance review—the key evidence on which plaintiff relies to show he was meeting defendant's expectations—does not show that he was performing satisfactorily. Rather, it reveals defendant's disappointment with plaintiff's performance and, in particular, his meager attendance record. That interpretation is supported by DelSasso's deposition testimony, in which DelSasso characterizes this performance review as "below average." Plaintiff asserts that because "the reviews are lacking an average number score or number range, it is difficult to pinpoint a specific grade or ranking on any employee evaluations," but DelSasso's testimony provides the very context plaintiff wants the court to believe does not exist.

**Plaintiff Was Replaced by or Treated Better than a Younger, Similarly Situated Employee**

The fourth prong of McDonnell Douglas requires a plaintiff to show that he was replaced by a younger, similarly situated employee. The test is modified somewhat in a reduction in force situation. There, a plaintiff may use one of two alternative formulations: 1) that the plaintiff was

replaced by, and not treated less favorably than, a substantially younger employee; or 2) that his duties were absorbed by retained workers outside of the protected class. Gadsby v. Norwalk Furniture Corp., 71 F.3d 1324, 1331 (7th Cir. 1995). In the instant case, plaintiff asserts that "there are allegations that this is a reduction in force case," although nowhere in the briefing has either of the parties explained that positions and duties were entirely eliminated (the standard for a traditional RIF situation). Merillat v. Metal Spinners, Inc., 470 F.3d 685, 688 (7th Cir. 2006). Due to his potential confusion over the meaning of "reduction in force" and the variable standards for McDonnell Douglas's fourth prong, plaintiff seems to conflate the two standards. He argues that he was replaced by a younger employee (the standard for a-non RIF case). He also, though, argues that defendant treated more favorably the specials department workers who were significantly younger than he (the standard for a RIF case). Neither of these arguments is supported by sufficient evidence to create a triable issue of fact.

Plaintiff's contention that he was replaced by a younger, female employee (Allison Johnson) is supported solely by his own testimony. Because he points to no additional evidence that this occurred, and because defendant has submitted convincing evidence that this employee was not re-hired on a permanent basis, the court cannot conclude that a reasonable jury could find that plaintiff has satisfied the fourth prong of his prima facie case based on that allegation alone. Plaintiff's other (RIF-style) argument, that defendant did not terminate other, younger employees from his department, is also unpersuasive. It is true that defendant retained younger employees when it laid off plaintiff. But, based on the evidence before the court, none of these employees had an attendance record as poor as plaintiff's. And even though defendant could have chosen to lay off some of these younger workers, the fact that it did not does not automatically mean that

plaintiff has pointed to enough evidence to convince a reasonable jury. He must also show that the employer intentionally treated younger employees more favorably despite actual knowledge that their work was inferior. "RIF decisions often involve splitting hairs, and sometimes employers make mistakes, retaining an inferior worker for lack of omniscience." Martino v. MCI Comms. Servs., Inc., 574 F.3d 447, 454 (7th Cir. 2009), citing Testerman v. EDS Technical Prods. Corp., 98 F.3d 297, 304 (7th Cir.1996) (in RIF cases, "we deal with small gradations, with an employer's subjective comparison of one employee to another, and it is incumbent upon us to remember that what is at issue is not the wisdom of an employer's decision, but the genuineness of the employer's motives."). Plaintiff has presented no evidence as to the genuineness of defendant's motives in retaining younger employees.

**Pretext**

Although the analysis need not proceed further due to the fact that plaintiff has failed to satisfy the second and fourth prongs of his prima facie case, the court will also briefly address defendant's legitimate, non-discriminatory reasons for its actions and plaintiff's inability to show that defendant's reasons were pretextual.

Plaintiff may demonstrate that defendant's stated reasons for his termination are pretextual either directly, by showing that "a discriminatory reason more likely motivated" the termination, or indirectly, by showing that defendant's reasons are "unworthy of credence." Senske v. Sybase, Inc., 588 F.3d 501, 507 (7th Cir. 2009) (internal citations and quotations omitted). Whichever method a plaintiff uses, he must identify all of his employer's independently sufficient justifications for the adverse employment action and "must cast doubt on each of them." Lesch v. Crown & Cork Seal Co., 282 F.3d 467, 473 (7th Cir. 2002) (citation omitted); see Senske, 588

11

F.3d at 507 ("Senske must show that Sybase is lying with respect to each of its proffered explanations, unless this is the rare case where one reason is so 'fishy and suspicious' as to cast doubt on them all.") (citation omitted).

Instead of reviewing each of defendant's explanations for his termination, plaintiff primarily addresses just one: his poor attendance record. That alone means that his effort to establish pretext will almost surely fail, unless plaintiff can show that this one reason is so suspicious as to cast doubt on all of defendant's explanations. But his argument is not sufficiently persuasive to create a triable issue of fact as to whether the poor attendance explanation is unworthy of credence, let alone to cast doubt on defendant's other reasons.

To question defendant's explanation that its decision to terminate him was a result of his attendance record, plaintiff presents three rebuttal arguments, none of which is even minimally persuasive. First, he argues that he "can present evidence that other younger employees were treated more favorably in this regard and had documented attendance issues, yet plaintiff was the only one terminated." He points to Kyle Miller, another employee in the specials department who was disciplined for attendance problems but was not laid off. What plaintiff fails to point out, although it is apparent from the dates on the absenteeism write-ups that he provides to the court, is that Miller was disciplined for absenteeism in 2003 and 2004. Plaintiff's absenteeism problems occurred well into 2006, when defendant was suffering economically and was beginning to institute layoffs. The other employee plaintiff cites is Jim Murray, who according to plaintiff had comparable attendance problems because he had seventeen late days and one partial day in 2006, twenty-one late or partial days in 2007, and eighteen late or partial days in 2008. Compared to

plaintiff's own thirty-four late days, nineteen partial days, and twenty-eight absences in 2006, however, Murray's attendance deficiencies are trivial.

Second, plaintiff claims that he was more qualified than Miller and Murray, both younger specials department workers who have not been laid off (although Miller was reassigned to a different department) because he had worked for defendant for over two decades and had experience in multiple areas of the shop. Plaintiff's supporting evidence for this allegation is his own self-serving testimony, which is not sufficient to establish pretext. Billups v. Methodist Hosp. of Chicago, 922 F.2d 1300, 1303 (7th Cir. 1991) ("[An employee's] own self-serving remarks standing alone are insufficient to raise doubt as to the credence of the employer's explanation for termination.") (citations omitted), cited in Schultz v. General Elec. Capital Corp., 37 F.3d 329, 334 (7th Cir. 1994). Further, plaintiff has not offered any evidence for why these younger workers might be similarly situated to him. See Senske, 588 F.3d at 510 ("Although the 'similarly situated' concept is a flexible one, the comparators must be similar enough that differences in their treatment cannot be explained by other variables, such as distinctions in their roles or performance histories."). He has not, for example, demonstrated that Miller and Murray missed work nearly as often as he did.

Third, plaintiff asserts that "[n]umerous questions of fact exist" as to whether defendant's stated reasons are pretextual because, when he was laid off, he was informed that his performance was good and he was being terminated only because of a "lack of work situation." Plaintiff's own deposition testimony is the only evidence of these purported statements. Again, an employee's own self-serving testimony, alone, is "insufficient to raise doubt as to the credence of the employer's explanation for termination." Billups, 922 F.2d at 1303 (citations omitted). Further,

13

even viewing plaintiff's testimony in the most favorable light, "general averments of adequate performance [such as a supervisor's statement that an employee's work is 'good'] are insufficient to create a factual issue on summary judgment even when corroborated by statements of supervisors or co-workers," which plaintiff's testimony is not. Dey v. Colt Constr. & Dev. Co., 28 F.3d 1446, 1460 (7th Cir. 1994).

Because plaintiff has failed to offer credible evidence that would demonstrate to a reasonable jury that he met defendant's legitimate performance expectations, that he was replaced by or treated better than a younger, similarly situated employee, or that defendant's reasons for terminating him were pretextual, the court grants defendant's motion for summary judgment on Count I.

### III.     Count II: ERISA

Plaintiff's complaint alleges that defendant violated ERISA because it terminated him "in order to deprive him of continued participation in Tri-Star's funded employee welfare and benefit program." In support of its motion for summary judgment, defendant argues that "[t]here is absolutely no evidence that Tri-Star included Colabuono in the initial wave of layoffs as a result of his age in alleged violation of either the [ADEA] or the Employment Retirement Income Security Act ("ERISA")." Plaintiff's response brief does not address defendant's contention that he lacks evidence to support his ERISA claim. In fact, his response does not refer to ERISA even once. He focuses solely on his position that Tri-Star's argument for summary judgment is such a "lackadaisical effort [that it] can hardly be regarded as meeting its burden of establishing it is entitled to summary judgment on plaintiff's ADEA claim." By ignoring the motion for summary

14

judgment as to the ERISA claim, plaintiff has effectively conceded that no evidence exists to support it. Therefore, the court grants defendant's motion for summary judgment as to Count II.

IV.     **Motion to Strike Defendant's Affidavits**

In support of its motion for summary judgment, defendant attached three affidavits from its employees. Plaintiff contends that these affidavits should be stricken because they: (1) directly contradict the affiants' previous deposition testimony; (2) lack credible foundation; (3) state only legal conclusions, not facts; and (5) contain hearsay testimony. Because the court has before it sufficient evidence to grant defendant's motion for summary judgment even without these affidavits, plaintiff's motion to strike the affidavits is denied as moot. Defendant does not need to offer affidavits to support its motion for summary judgment; "where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Celotex, 477 U.S. at 324. For the reasons described above in Section III, plaintiff has not presented sufficient evidence as to prongs two and four of his prima facie case; neither has he presented sufficient evidence that defendant's stated reasons for his termination were pretextual.

V.      **Motion to Strike Portions of Defendant's Reply Brief Materials or Alternatively, For Leave to File a Sur-Response**

Plaintiff claims defendant raised new arguments and new evidence in its reply brief, thereby violating the well-established rule that arguments raised for the first time in a party's reply brief are waived. Although plaintiff correctly cites to Seventh Circuit authority for the proposition that arguments raised for the first time in a reply brief are waived, he is wrong that defendant raised new arguments in its reply brief. According to plaintiff, defendant's reply brief

15

makes two new arguments: (1) "Plaintiff is unable to demonstrate that his age was the 'but for' reason for his lay off," and (2) "Plaintiff is unable to meet his prima facie case of age discrimination [because] . . . Defendant claims (falsely) that Plaintiff was not replaced by any worker, older or younger . . . ."

Neither of these arguments is new. As for the first, it is true that defendant does not invoke the "but for" language until its reply. But whether plaintiff has sufficient evidence that his age was a but for cause of his termination is the fundamental issue in the summary judgment briefing. It is not some mysterious tactical barb that defendant withheld until its reply brief for the purpose of forcing plaintiff to, as he puts it, "expend additional time and resources responding to matters twice." Moreover, the second argument plaintiff claims is "new" is responsive to plaintiff's own argument that defendant replaced him with a younger worker. Defendant did not raise a new argument by claiming that it did not replace plaintiff after he was terminated. Rather, defendant has fairly addressed a matter raised in plaintiff's response. Plaintiff's motion is denied.

## CONCLUSION

For the foregoing reasons, the court: (1) grants defendant's motion for summary judgment; (2) denies plaintiff's motion to strike defendant's affidavits; and (3) denies plaintiff's motion to strike portions of defendant's reply brief or for leave to file a sur-response.

**ENTER:** September 8, 2010

_____
**Robert W. Gettleman**

**United States District Judge**